1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
                                    AT SEATTLE
9

10   SCOTT HANSON, et al.,                    CASE NO. C13-0939JLR

11                      Plaintiffs,           ORDER GRANTING MOTION
                                              TO SEAL
12            v.

13   WELLS FARGO HOME
     MORTGAGE, INC., et al.,
14
                        Defendants.
15

16                          **I.   INTRODUCTION**

17          Before the court is Defendants Wells Fargo Bank, N.A., Wells Fargo & Company,

18   and Wells Fargo Home Mortgage, Inc.'s (collectively "Wells Fargo") motion to seal

19   (Mot. to Seal (Dkt. # 37)) pages 68 through 79 of the declaration of Amanda Weatherly

20   (Weatherly Decl. (Dkt. # 34)).  Wells Fargo asserts that these pages are protected by

21   attorney-client privilege and the work-product doctrine but were inadvertently filed with

22   Ms. Weatherly's declaration.  (*See* Mot. to Seal at 1).  Having reviewed the motion, all

1 submissions filed in support of and opposition thereto, the balance of the record, and the

2 applicable law, and considering itself fully advised, the court GRANTS Wells Fargo's

3 motion.

4 ## II.    BACKGROUND

5 On August 15, 2013, Wells Fargo filed the declaration of Amanda Weatherly (*see*

6 Weatherly Decl.) in support of its motions for judgment on the pleadings (*see* Mot. to

7 Dismiss 1 (Dkt. # 30); Mot. to Dismiss 2 (Dkt. # 32)).  Five days later, Wells Fargo's

8 counsel conducted an internal review and discovered it had inadvertently included

9 documents in the Weatherly declaration that it now claims are protected by attorney-

10 client privilege and the work-product doctrine.  (*See* Mot. to Seal at 2; Roesch Decl. (Dkt.

11 # 38) ¶ 3.)  Upon discovering the documents, Wells Fargo's "[c]ounsel immediately sent

12 an email to the other parties . . . asking that they (a) treat the identified pages as

13 inadvertently produced attorney-client and work product documents, and (b) respond

14 with convenient times for a short meet-and-confer telephone conference regarding" a

15 motion to seal.  (Mot. to Seal at 2; Roesch Decl. ¶ 3.)

16 Wells Fargo withdrew its motions for judgment on the pleadings after it discussed

17 the allegedly protected documents with counsel for Plaintiffs Scott and Jane Hanson (the

18 "Hansons") and counsel for Defendant Quality Loan Service of Washington ("Quality").

19 (*See* Withdrawal (Dkt. # 36); Mot to Seal at 3.)  Wells Fargo then filed this motion to seal

20 on August 22, 2012. (*See* Mot. to Seal.)

21 //

22 //

# III.   ANALYSIS

## A.   Standard and Procedural Requirements

The Hansons do not directly oppose Wells Fargo's motion to seal (*see* Hanson Resp. (Dkt. # 42) at 1 ("Plaintiffs do not oppose sealing the pages from public view.")). Even so, "[t]he Court will not seal documents simply because the parties stipulate or do not oppose the sealing of certain documents." *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, No. 09-5232 BHS, 2010 WL 2541801, at *1 (W.D. Wash. June 21, 2010).

Under Local Rule LCR 5(g)(3), a party's motion to seal must include the following:

> (A) a certification that the party has met and conferred with all other parties in an attempt to reach agreement on the need to file the document under seal, to minimize the amount of material filed under seal, and to explore redaction and other alternatives to filing under seal; this certification must list the date, manner, and participants of the conference;
>
> (B) a specific statement of the applicable legal standard and the reasons for keeping a document under seal, with evidentiary support from declarations where necessary.

Local Rules W.D. Wash. LCR 5(g)(3).

Wells Fargo has "met and conferred" with each party as required by Local Rule LCR 5(g)(3)(A). In his declaration, counsel for Wells Fargo lists "the date, manner, and participants of the conference[s]" it conducted with the Hansons and Quality as required by Local Rule LCR 5(g)(3)(A). (*See* Roesch Decl. ¶¶ 4-5.) Mr. Roesch also states that he "discussed agreement regarding the need to seal, minimizing the amount of material to be sealed, and potential alternatives to sealing." (*Id.*) These assertions are uncontested

1   by either Quality or the Hansons,[1] so the court finds that Wells Fargo has satisfied Local

2   Rule LCR 5(g)(3)(A).

3       Wells Fargo relies on the common-law "good cause" standard to satisfy Local

4   Rule LCR 5(g)(3)(B) and justify its motion to seal.  (*See* Mot. to Seal at 3-4.)  Courts

5   recognize that "[t]here is a strong presumption of public access to the court's files," and

6   the moving party bears the burden of overcoming this presumption.  Local Rules W.D.

7   Wash. LCR 5(g); *see also Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178

8   (9th Cir. 2006).  In the case of motions to seal dispositive motions and any attached

9   documents, to overcome this presumption the moving party must come forward with a

10  "compelling reason" to seal.  *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th

11  Cir. 2010).  In the case of motions to seal non-dispositive motions and attached

12  documents, the public interest is relatively low, so the moving party need only

13  demonstrate "good cause."  *Id.*; *see also Macon v. United Parcel Serv., Inc.*, No. 12-0260

14  RAJ, 2013 WL 951013, at *5 (W.D. Wash. Mar. 12, 2013) (granting motion to seal

15  medical records filed a day after the records were submitted to the court because of the

16  "private nature of the documents at issue . . .").

17      As its showing of good cause, Wells Fargo argues that pages 68 through 79 of the

18  Weatherly declaration are protected by attorney-client privilege and the work-product

19  doctrine.  (*See* Mot. to Seal at 5-7.)  This court has previously accepted both attorney

20

---

21      [1] *See* Local Rules W.D. Wash. CR 7(b)(2) ("If a party fails to file papers in opposition to
    a motion, such failure may be considered . . . an admission that the motion has merit.").

22

1  client-privilege and the work-product doctrine as justification for prospectively sealing

2  judicial records.  *See Wacom Co., Ltd. v. Hanvon Corp.*, No. 06-5701 RJB, 2008 WL

3  623631, at *2-3 (W.D. Wash. Mar. 4, 2008) ("The Court should reserve its opinion on

4  whether [an exhibit] should be sealed until the Court determines whether the [exhibit]

5  contain[s] attorney work product."); *Specialty Surplus Ins. Co. v. Lexington Ins. Co.*, No.

6  06-5246 RJB, 2007 WL 2404703, at *18 (W.D. Wash. Aug. 17, 2007) (granting motion

7  to file exhibit under seal because "[t]he public interest in accessing the courts does not

8  outweigh the compelling need to honor the attorney-client privilege").

9       Courts generally accept attorney-client privilege and the work-product-doctrine as

10  a "compelling reason" justifying a motion to seal.  *See Lugosch v. Pyramid Co. of*

11  *Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006) (stating "attorney-client privilege might

12  well be such a compelling reason" to preserve seal); *Travelers Prop. Cas. Co. of Am. v.*

13  *Centex Homes*, No. 11-3638-SC, 2013 WL 707918, at *2 (N.D. Cal. Feb. 26, 2013)

14  (accepting attorney client privilege as a compelling reason to allow a party to refile

15  redacted version of document attached to motion for summary judgment); *TriQuint*

16  *Semiconductor, Inc. v. Avago Technologies Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL

17  6182346, at *5 (D. Ariz. Dec. 13, 2011) (accepting attorney-client privilege as a

18  compelling reason justifying seal); *Asdale v. Int'l Game Tech.*, No. 3:04-CV-703-RAM,

19  2010 WL 2161930, at *5 (D. Nev. May 28, 2010) (accepting attorney-client privilege and

20  the work-product doctrine as both good cause and a compelling reason to seal non-

21  dispositive and dispositive motions respectively).  By implication, attorney-client

22  privilege and the work-product doctrine also satisfy the lower "good cause" standard

relied upon by Wells Fargo.  Therefore, the question the court must answer is whether pages 68 through 79 of the Weatherly declaration fall under the protection of either attorney-client privilege or the work-product doctrine.  The court now turns to these issues.

**B.    Attorney-Client Privilege**

Attorney-client privilege is a long standing doctrine established to "encourage full and frank communication between attorneys and their clients."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Attorney-client privilege "may not be used both as a sword and a shield."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  Courts narrowly construe the breadth of protection afforded by the privilege because the privilege "impedes full and free discovery of the truth."  *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

The party asserting attorney-client privilege bears the burden of proving these eight elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (internal quotation omitted).

Wells Fargo asserts attorney-client privilege only with respect to pages 69 and 70 of the Weatherly declaration.  (*See* Mot. to Seal at 5 ("The inadvertently included documents include communications between a Wells Fargo litigation paralegal and a

ORDER- 6

1   Wells Fargo employee tasked with reviewing [the] draft declaration for Ms. Weatherly.

2   [Citing to pages 69 and 70] . . . This communication is protected by the attorney-client

3   privilege.").)[2]

4        Pages 69 and 70 are attorney-client privileged communications.  Page 70 is an

5   email between a Wells Fargo paralegal and what appears to be a general email address

6   for declaration review, and page 69 is a cover sheet associated with the same

7   communication.  (*See* Mot. to Seal at 5; Weatherly Decl. at 69.)   In the corporate context,

8   attorney client privilege extends to communications between counsel for the corporation

9   and the corporation's employees.  *See United States v. Chen*, 99 F.3d 1495, 1502 (9th

10  Cir. 1996) (citing *Upjohn*, 449 U.S. at 390-94).  The communication here was made in

11  confidence and in the course of preparing a declaration as part of Wells Fargo's legal

12  defense.  (*See* Mot. to Seal at 5-6.)  Wells Fargo has met its burden to show that pages 69

13  and 70 of the Weatherly declaration are communications protected by the attorney-client

14  privilege.

15       However, this privilege cannot extend to the other pages at issue even though they

16  were attached to pages 69 and 70.  Documents attached to or included in an attorney-

17  client communication are not automatically privileged, and the party asserting privilege

18  must prove that each attachment is protected by privilege.  *See O'Connor v. Boeing N.*

19  *Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) ("As to documents subject to the

20  _____

21       [2] To the extent that Wells Fargo asserts attorney-client privilege with respect to pages 71
    through 79, the Hansons summarily oppose any privilege with respect to those pages.  (*See*
22  Hanson Resp. (Dkt. # 42) at 1 ("Plaintiffs do not agree that . . . pp. 71-79 [of the Weatherly
    declaration] fall within attorney-client privilege and the work product doctrine . . . .")).

1    attorney-client privilege or work product doctrine . . . not all attachments to, or enclosures

2    with, such documents are necessarily protected by the privilege.") (citing *Pacamor*

3    *Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 511 (D.N.H. 1996) ("Attachments

4    which do not, by their content, fall within the realm of the [attorney-client] privilege

5    cannot become privileged by merely attaching them to a communication with the

6    attorney.")).  Even though this court is persuaded that pages 69 and 70 are privileged

7    communications, that privilege does not automatically extend to other attached or

8    associated documents.  Also, Wells Fargo has not provided facts to support a claim of

9    privilege over any of the remaining pages of the Weatherly declaration.

10           For the reasons stated above, the court is persuaded that pages 69 and 70 of the

11   Weatherly declaration are subject to the protection of attorney-client privilege.

12   **C.     Work-Product Doctrine**

13           The work-product doctrine protects from discovery "documents and tangible

14   things prepared by a party or his representative in anticipation of litigation."  *United*

15   *States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *Admiral Ins. Co. v. U.S. Dist.*

16   *Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (internal quotation marks

17   omitted).  The doctrine applies to "documents or the compilation of materials prepared by

18   agents of the attorney in preparation for litigation."  *Id.* (citing *United States v. Nobles*,

19   422 U.S. 225, 238 (1975)).  The overarching goal of the work-product doctrine is to

20   "prevent[] disclosure of [the] 'mental impressions, conclusions, opinions, or legal

21   theories of a party's attorney or other representative concerning the litigation.'"  *Ibrahim*

22   *v. Dep't of Homeland Sec.*, 669 F.3d 983, 999 (9th Cir. 2012) (quoting Fed. R. Civ. P.

26(b)(3)(B)).  The party claiming work-product protection bears the burden of proof.  *See id.* (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)).

Wells Fargo asserts that "[t]he inadvertently included documents are also protected by the work product doctrine."  (Mot. to Seal at 6.)  Wells Fargo asserts that pages 68 through 79 were "prepared in anticipation of litigation . . . ,"  (Mot. to Seal at 7), and that pages 72 through 79 "contain markings that were made [by Ms. Weatherly] in the course of . . ." reviewing her declaration.  (*Id.*)

The court agrees.  The documents in question were gathered and used by Ms. Weatherly and Wells Fargo's legal team in the course of preparing the declaration.  The litigation had already commenced, and the documents, including the markings made on them, were prepared with the knowledge that they would be filed in the litigation.  Further, the pages contain, at least in part, the "mental impressions, conclusions, opinions, or legal theories of [Wells Fargo's] attorney or other representative concerning the litigation."  *Ibrahim*, 669 F.3d at 999.  Accordingly, the court finds that the pages Wells Fargo seeks to seal are protected by the work-product doctrine.

**D.   Waiver**

The protections of both attorney-client privilege and the work-product doctrine are not absolute and can be waived.  *See* Fed. R. Evid. 502; s*ee also Graf*, 610 F.3d at 1156 (attorney-client privilege remains intact "unless the protection be waived"); *Richey*, 632 F.3d at 567 ("The work-product doctrine's protections are waivable.").  Wells Fargo, as the party asserting privilege, bears the burden of proving that it did not waive attorney-

1    client privilege or work product protection.  *See Skansgaard v. Bank of Am., N.A.*, No.

2    11-0988 RJB, 2013 WL 828210, at *2 (W.D. Wash. Mar. 6, 2013) (citing *Weil*, 647 F.2d

3    at 25).

4          Generally, voluntary disclosure to a third party in a state or federal proceeding of a

5    document protected by attorney-client privilege or the work-product doctrine waives both

6    protections.  *See id.* at 566; *see also* Fed. R. Evid. 502(a).  However, a disclosure does not

7    constitute a waiver of either protection if:

8          (1) the disclosure is inadvertent;
           (2) the holder of the privilege or protection took reasonable steps to prevent
9          disclosure; and
           (3) the holder promptly took reasonable steps to rectify the error, including
10         (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

11   Fed. R. Evid. 502(b).  This version of Rule 502 was signed into law in 2008,[3] and

12   was patterned after the common law "totality of circumstances approach."[4]

13         Courts of the Ninth Circuit still tend to apply the "totality of the circumstances

14   approach" to "cases involving the 'inadvertent' disclosure" of attorney-client privileged

15   or work-product protected documents without consideration for the elements of Federal

16   Rule of Evidence 502(b).  *See Skansgaard*, 2013 WL 828210, at *2 (applying only the

17   "totality of the circumstances approach" even after quoting Federal Rule of Evidence

18   502(b)); *Clark Cnty. v. Jacobs Facilities, Inc.*, No. 2:10-CV-00194-LRH, 2012 WL

19   4609427, *10 (D. Nev. Oct. 1, 2012) (same); *Pac. Coast*, 2011 WL 4704217, at *4

20   _____

21         [3] Pub. Law 110-322, §1(c), 122 Stat. 3537 (Sept. 19, 2008).

22         [4] *See Pac. Coast Steel v. Leany*, No. 2:09-CV-02190-KJD, 2011 WL 4704217, at *5 (D.
     Nev. Oct. 4, 2011) (citing Fed. R. Evid. 502 advisory committee's note).

1    (same); *Goodrick v. Sandy*, No. 1:10-CV-00603-EJL, 2013 WL 1729108, at *5 (D. Idaho

2    Apr. 22, 2013) (applying only the "totality of the circumstances approach" without even

3    citing Federal Rule of Evidence 502(b)); *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, No.

4    07-0310 JLR, 2011 WL 1930603, at *2 (W.D. Wash. May 18, 2011) (same).

5           Under the totality of circumstances approach, courts consider:

6           (1) the reasonableness of the precautions to prevent inadvertent disclosure,
            (2) the time taken to rectify the error, (3) the scope of discovery, (4) the
7           extent of the disclosure, and (5) the overriding issue of fairness.

8    *Cell Therapeutics*, 2011 WL 1930603, at *2 (citing *United States v. SDI Future Health,*

9    *Inc.*, 464 F. Supp. 2d 1027, 1045 (D. Nev. 2006)).  Some of these factors are duplicative

10   of those in Federal Rule of Evidence 502(b).  The court will apply the standard codified

11   in Federal Rule of Evidence 502(b) and also utilize some of the factors from the "totality

12   of the circumstances approach" in its analysis.

13          1.   Inadvertent Disclosure

14          Wells Fargo asserts that it inadvertently disclosed pages 68 through 79 of the

15   Weatherly declaration.  (*See* Mot. to Seal at 1.)  This assertion is undisputed[5] and the

16   court finds nothing to the contrary in the record.  Thus, Wells Fargo satisfies Federal

17   Rule of Evidence 502(b)(1).

18          2.   Reasonable Steps to Prevent Disclosure

19          This element of Federal Rule of Evidence 502(b) closely parallels the first element

20   of the "totality of circumstances approach."  *See Cell Therapeutics*, 2011 WL 1930603, at

21   _____

22          [5] *See* Local Rules W.D. Wash. CR 7(b)(2) ("If a party fails to file papers in opposition to
     a motion, such failure may be considered . . . an admission that the motion has merit.").

ORDER- 11

1   *2 (citing *SDI Future*, 464 F. Supp. 2d at 1045).  Within this factor, courts review the

2   procedures "followed to prevent disclosure" and the "scope of discovery."  *See Sidney I.*

3   *v. Focused Retail Prop. I, LLC*, 274 F.R.D. 212, 216-17 (N.D. Ill. 2011).

4         Wells Fargo took reasonable steps to prevent disclosure.  Indeed, Wells Fargo took

5   steps in reviewing these documents that resulted in the documents being identified as

6   privileged.  Wells Fargo then labeled the documents as privileged (*see* Weatherly Decl. at

7   70) and attached a cover sheet, page 68, that said "Backup documentation not to be

8   submitted to court" (*id.* at 68).  Wells Fargo took steps to prevent disclosure, and those

9   steps were largely successful.  It was only through an administrative error that the

10   documents were mistakenly filed.  (Roesch Decl. ¶ 2.)  The court has examined "the

11   context of disclosure" in this case, including (1) the procedural setting of the disclosure,

12   (2) the extent of the disclosure,[6] and (3) the timing of the disclosure, *see Sidney*, 274

13   F.R.D. at 217, and concludes that Wells Fargo and its counsel's precautions were

14   reasonable.

15         3.  <u>Reasonable Steps To Rectify The Error</u>

16         Wells Fargo also took reasonable steps to rectify its error.  For this factor "courts

17   focus on the producing party's response[, particularly response time,] after it realizes that

18   it has disclosed privileged material."[7]  *Sidney*, 274 F.R.D. at 217 (finding that disclosing

19  

20

21         [6] Element four from the "totality of circumstances approach."  *Id.* (citing *SDI Future*, 464 F. Supp. 2d at 1045).

22         [7] This statement is similar to element two from the "totality of circumstances approach." *Id.* (citing *SDI Future*, 464 F. Supp. 2d at 1045).

1  party took reasonable steps to rectify when, upon being confronted with the inadvertently

2  produced document in a deposition, counsel immediately objected to its use and then

3  requested return of the document the next day); *Georgia-Pacific Corp. v. GAF Roofing*

4  *Mfg. Corp.*, No. 93 Civ. 5125 (RPP), 1995 WL 117871, at *2 (S.D.N.Y. Mar.20, 1995)

5  (finding response within two business days of learning of inadvertent production

6  reasonable); *Goodrick*, 2013 WL 1729108, at *6 (finding response of 15 days

7  reasonable); *Baptiste v. Cushman & Wakefield, Inc.*, No. 03CIV.2102(RCC)(THK), 2004

8  WL 330235, at *3 (S.D.N.Y. Feb. 20, 2004) (finding 12 day delay in attempting to

9  remedy disclosure unreasonable).  Here, upon discovering the disclosure, Wells Fargo's

10  counsel immediately contacted counsel for Quality and the Hansons requesting they

11  return the inadvertently disclosed documents.  (*See* Mot. to Seal at 2.)  Wells Fargo's

12  counsel then filed its motion to seal within two days of discovering the disclosure.  (*See*

13  Mot. to Seal at 8.)  This is sufficient to satisfy the standard.

14          4.  <u>No Waiver</u>

15          These three conditions having been met, the court concludes that Wells Fargo did

16  not waive attorney-client privilege or work product protection with respect to pages 68-

17  79 of the Weatherly Declaration.  These documents remain privileged and protected

18  despite being inadvertently disclosed.

19  //

20  //

21  //

22  //

ORDER- 13

1

**IV.   CONCLUSION**

2        Based on the foregoing, the court concludes that there is good cause to seal pages

3  68-79 of the Weatherly Declaration.  Accordingly, the court GRANTS Wells Fargo's

4  motion to seal (Dkt. # 37), DIRECTS the clerk to seal the Weatherly Declaration (Dkt.

5  # 34) and ORDERS Wells Fargo to file a copy of the Weatherly Declaration with pages

6  68-79 removed.

7        Dated this 17th day of October, 2013.

8

9

10       _____

         JAMES L. ROBART

11       United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 14